UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARILEE G. OSBORNE,
    PLAINTIFF

VS.

COMMISSIONER OF SOCIAL
SECURITY,
    DEFENDANT

CASE NO. 1:08CV00615
(WEBER, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Social Security Disability in September, 2004. Her application was denied, both initially and upon reconsideration. She then requested and obtained a hearing before an Administrative Law Judge (ALJ) in October, 2007 at Cincinnati, Ohio. Plaintiff, who was represented by counsel at the hearing, testified as did Vocational Expert (VE), Kenneth Manges. The ALJ reached an unfavorable decision in November, 2007, following which Plaintiff processed an appeal to the Appeals Council, which denied review in July, 2008. Plaintiff then timely filed her Complaint, seeking judicial review in September, 2008.

## STATEMENTS OF ERROR

Plaintiff asserts two Statements of Error: (1)" The ALJ erred in determining Plaintiff's RFC" and (2) "The ALJ erred in finding the Plaintiff not entirely credible."

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she was born in July, 1953 and that her height was 5'2" and weight was 120 lbs. Plaintiff stated that she was right-handed, married, a non-smoker, high school

graduate (but in slow learning classes) and a licensed driver. She said her work experience was as a cashier and stock person at various gas stations, at a country club as a prep cook and at a hospital as a cook, cashier and kitchen helper.

Plaintiff described her pain as starting in her lower back, running across her hips and as "constant." Her primary care physician, Dr. Jennifer Hill, sent her to a surgeon, Dr. Montcrese, who read her MRIs and told her that surgery was not an option and that she would "just have to live with it." Physical therapy was tried, but it made the pain worse. Her primary care physician, Dr. Duque-Pages, sent her to a pain specialist, Dr. Buenaventura, who injected her back, but the injections did not relieve her pain.

Plaintiff estimated that she could sit for 20 minutes to 1/2 hour and walk for 10-15 minutes. She estimated that she could stand for 10-15 minutes before needing to change positions. She is able to wash a limited amount of dishes, cook and shop on occasion, but her daughter, Angelina, vacuums, cleans and does the bulk of the household chores. She is able to attend church, but can't sit through the whole service.

She suffers from depression and saw a psychologist until she could no longer afford the bills. She admitted to frequent crying spells and difficulty concentrating and focusing. She no longer plays volleyball and baseball and no longer attends family cookouts.

Her last employment was with Clinton Memorial Hospital, a job she left in 2003 because of back pain. She currently takes Singulair and Lidoderm (Tr. 266-289).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE a series of four hypothetical questions. The first was based on an assumption that Plaintiff could handle the physical requirements of medium work and could perform simple routine tasks and could frequently climb, balance, stoop, kneel, crouch and crawl, but should not be subject to strict time or production requirements. The VE responded that every job has a production requirement, but that some have less of a time requirement, such as the job of janitor. The VE amended his hypothetical in response to the VE's direction and the VE responded that the job of janitor is one that Plaintiff could perform and that the job existed in

representative numbers in the national economy.

The second hypothetical also assumed the ability to perform medium work, and the ability to frequently climb, balance, stoop, kneel, crouch and crawl plus the mental restrictions of Exhibit 6F6, the report of Stephen Yerian, Psy. D. The VE responded that Plaintiff could still perform the job of janitor as well as that of dishwasher, prep cook and cashier.

The third hypothetical asked the VE to assume Plaintiff had the capacity to perform the exertional requirements of light work, she could perform the job of cashier at a hospital as that job is generally performed..

The fourth hypothetical assumed the accuracy of Plaintiff's testimony. The VE responded that productive work would be precluded.

## THE DECISION BY THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff that Plaintiff suffers from low back pain and depression and that both of her impairments are severe, but do not equal any Listing, either alone or in combination. The ALJ further found that Plaintiff has the residual functional capacity to perform "simple, routine repetitive medium work without significant decisionmaking." The ALJ further found that Plaintiff could perform the medium and light exertional job of janitor and the light exertional job of cashier.

## THE MEDICAL RECORD

Hugh Moncrief, M.D., reported in July, 2003 that Plaintiff's complaint was low back pain in the sacral and coccyx area and in the hip and buttocks. The pain began spontaneously three months ago. Naprosyn and steroid therapy has not helped. Flexion, bending, twisting, turning and sitting make the pain worse. Standing seems to minimize the pain. Chiropractic manipulation helps only temporarily. An MRI showed disc bulges at L4-5 and L5-S1, but no neuroforaminal narrowing or central canal stenosis. Dr. Moncrief diagnosed her with an acute sacroiliac sprain/strain and recommended physical therapy. (Tr. 111-113).

3

Records from Jennifer Hill, M.D., showed that Dr. Hill treated Plaintiff for low back pain for a two-week period in 2003. She stated that Plaintiff had limited range of motion in her spine, but that her gait was normal and no ambulatory device was used. Dr. Hill commented that Plaintiff was "non-compliant to treatment protocol." (Tr. 114-120).

Records from the Physical Therapy Department at Miami Valley Hospital show that Plaintiff completed a two-month course of physical therapy in October, 2003 and "met all goals." The SI brace helps Plaintiff perform activities. She has good lumbo-sacral alignment and good overall flexibility, but needs to improve body mechanics. (Tr. 121-129).

Plaintiff was evaluated by an Ohio Claims Management physician, whose first name is surely Robert, but whose last name is reported as either Cooper or Lopez, in December, 2004. In any event, the mystery physician is a medical doctor. Plaintiff reported low back and left hip pain, which is localized in the lower lumbar spine and buttocks. The pain is exacerbated by sitting, standing and bending and somewhat helped by changing positions. "Palpitation of the lumbar paraspinals revealed mild tenderness . . . The sacroiliac joints are mildly tender. . . Lumbar range of motion was greatly reduced." The physician remarked that Plaintiff's age, history of hysterectomy and smoking history would place her at a risk for osteoporosis and degenerative joint disease. He concluded that Plaintiff's sitting should be limited to less than 4 hours per day and that she should be permitted to change positions hourly. Standing and walking should be limited to less than 2 hours per day. The lifting restriction was 10 lbs., either occasionally or frequently. Climbing, bending, stooping and balancing should be restricted. (Tr. 133-139).

A Physical Residual Functional Capacity Assessment was done in January, 2005 by Gerald Klyop, M.D., whose opinion was confirmed by Walter Holbrook, M.D. Dr. Klyop opined that Plaintiff could lift 25 lbs. frequently and 50 lbs. occasionally. He said that she could stand/walk for 6 hours in a workday and sit for 6 hours. Dr. Klyop based his opinion on the fact that "x-rays show normal lumbar spine, mild degenerative disc disease in the thoracic spine, MRI shows disc bulging, possible left L5 foraminal stenosis, neurological examination is normal for motor, sensory and reflexes, decreased range of motion, hip pain, possible osteoarthritis. . ." In stark contrast to the opinion provided by Dr. Cooper or Lopez, as the case may be, Dr. Klyop

4

felt that Plaintiff could frequently climb not only ramps and stairs, but ladders, ropes and scaffolds and frequently balance, stoop, kneel, crouch and crawl. (Tr. 140-147).

Stephen Yerian, Psy. D., a clinical psychologist, evaluated Plaintiff in May, 2005. Dr. Yerian's opinion was that Plaintiff was suffering from Major Depressive Disorder. He assigned a GAF of 61. Dr. Yerian concluded that Plaintiff's ability to relate to others was not impaired, that she was a person of low-average intelligence and had the capacity to understand and perform simple concrete instructions. Dr. Yerian felt that Plaintiff had moderately limited memory abilities and moderately limited ability to maintain attention and concentration as well as a moderately limited ability to withstand stress. (Tr. 148-154).

A Psychiatric Review was conducted in May, 2005 by Alice Chambly, Psy. D., also a clinical psychologist. Dr. Chambly diagnosed Plaintiff with a Depressive Disorder based on her reported symptoms of an appetite disturbance, decreased energy, feelings of worthlessness and difficulty concentrating or thinking. Dr. Chambly rated Plaintiff's limitation in the category called "Restriction of Activities of Daily Living" and in the category called "Difficulty in Maintaining Concentration, Persistence or Pace" as moderate. Plaintiff's limitation in the area called "Difficulties in Maintaining Social Functioning" was rated as mild. (Tr. 159-175). Dr. Chambly did say that Plaintiff should not work in jobs with strict time or production requirements because her pain response would maker her slower.

An MRI was read by Stephen Pomeranz, M.D., in May, 2005 and demonstrated "mild posterior spondylotic change at L4-5." (Tr. 182). In November, 2005, Rachel Duncan, a physical therapist reported to Dr. Duque-Pages that "Plaintiff gets almost complete relief when in "aquaciser," apparently some form of aquatic therapy, but the relief lasts for 1/2 day. A tens unit was prescribed. (Tr. 184-185).

Ricardo Buenaventura, M.D., is a pain specialist whose subspecialty is chronic spine pain. Dr. Buenaventura injected Plaintiff's lumbar spine with Bupivicaine and Depomedrol once in December, 2005 and twice in January, 2006. Dr. Buenaventura noted that Plaintiff walked with an antalgic gait, was tender over the lumbosacral and bilateral, posterior, superior iliac spines. Straight leg raising was negative on the left and positive on the right. Dr. Buenaventura's diagnosis was lumbar spondylosis, sciatica and sacroilitis. He prescribed Valium

5

for anxiety and Lidoderm and Relafen for pain. (Tr. 192-200).

Plaintiff was referred to Douglas Porter, M.D., for an electrodiagnostic examination (EMG) in January, 2006. Dr. Porter reported that the study was "essentially normal." There was "no convincing evidence of a focal lumbar spinal nerve root injury (radiculopathy), plexopathy, generalized neuropathy, focal peripheral nerve syndrome or primary muscle disease." In December, 2005, Richard Butler, M.D., reported that lumbar spine x-rays demonstrated "some sclerosis and facet arthropathy at L4-5 and L5-S1, but normal alignment with no fracture, well-maintained discs, no spondylolysis, intact pedicles and normal transverse process." Sacrum and coccyx x-rays were "radiographically within normal limits." X-rays of the pelvis and both hips were normal. (Tr. 201-204).

In July, 2006, Dr. Buenaventura reported to Helena Duque-Pages, M.D., apparently Plaintiff's primary care physician, that Plaintiff has had a two-year history of back and leg pain. Her lumbar spine MRI and x-rays show only facet arthritis at the L4-5 and L5-S1 levels. An EMG of her bilateral legs showed only a minimal symmetry of the tibial H-reflexes, but not enough to diagnose a spinal nerve root problem. Relafin and Neurontin were not helpful. A series of lumbar epidural steroid injections and an SI joint injection did not provide any long-term relief. Dr. Buenaventura decided to try a series of lumbar facet injections. (Tr. 245-260). Dr. Buenaventura did author a prior report to Dr. Duque-Pages in which he commented as follows: "I pointed out in April, 2006 to Mrs. Osborne that given her fairly benign diagnostic studies, I am unable to explain why she is in such pain and so disabled . . . She is not making any progress and seems depressed and stressed with regard to her chronic pain. I suggested a psychological referral as a way of helping her cope. . . There is nothing in her back that would be further irritated or damaged by her returning to work. . . She should try to remain active."

Paul Skogstrom, a Wilmington based psychologist, agreed with Dr. Buenaventura's advice that Plaintiff should remain active for psychological reasons as well." (Tr. 243).

**OPINION**

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden

of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner

8

examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir.

9

1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting

from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. If an individual's limitations are rated as "none,"or "mild" in the first three areas and "none" in the fourth area, the mental impairment will normally be found to be not severe. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1566(b) and 416.920a(e)-(f), 416.966(b).

In order to receive benefits, an individual must follow the treatment prescribed by his/her physician if the treatment will restore the ability to work, unless there is an acceptable reason for the failure to follow the treatment. 20 C.F.R. § 404.1530; *see Awad v. Secretary of H.H.S.*, 734 F.2d 288 (6th Cir. 1984); *Fraley v. Secretary of H.H.S.*, 733 F.2d 437 (6th Cir. 1984). Acceptable reasons for failure to follow prescribed treatment include, but are not limited to: 1) the treatment is contrary to plaintiff's religious beliefs; 2) plaintiff is unwilling to repeat a surgery which was previously unsuccessful; and 3) the treatment involves great or unusual risk. 20 C.F.R. § 404.1530(c). If an impairment can reasonably be controlled, or is

11

reasonably amenable to treatment, it cannot serve as a basis for a finding of disability. *Young v. Califano*, 633 F.2d 469, 472-73 (6th Cir. 1980); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.), *cert. denied*, 389 U.S. 993 (1967), *reh'g denied*, 389 U.S. 1060 (1968).

Benefits may not be denied, however, if the treatment is merely recommended, suggested, or offered as an alternative, as opposed to treatment being ordered or prescribed. *Harris v. Heckler*, 756 F.2d 431, 435 n.2 (6th Cir. 1985); *Young*, 633 F.2d at 472-73. The Commissioner may not presume that impairments are remediable; the record must show that the treatment will restore plaintiff's ability to work. *Johnson v. Secretary of H.H.S.*, 794 F.2d 1106, 1111-13 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435 n.2.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). However, a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano*, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The opinion of a non-examining

12

physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

13

Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

The first statement of error is that the ALJ's residual functional capacity assessment and resulting hypothetical question to the VE was too liberal. The reason why it is too liberal, theorizes Plaintiff, is because the ALJ followed the advice provided by a paper reviewer, rather than defer to the opinions of two examining, but non-treating sources, Dr. Yerian, a clinical psychologist, and the mystery physician, Dr. Lopez, Cooper or whomever. Dr. Yerian examined and tested Plaintiff in May, 2005. He felt that she was suffering from a depressive disorder, as did Dr. Chambly. Neither psychologist found any serious, extreme or marked emotional deficits, which would preclude productive work. The ALJ accepted Dr. Yerian's conclusions that Plaintiff had the capacity to perform jobs with simple and repetitive tasks and was of low-average intelligence, thus the ALJ imposed restrictions limiting her to jobs involving simple repetitive tasks and without significant decision making. While the two psychologists agreed that Plaintiff's ability to concentrate and attend was moderately impaired, the ALJ did not include a corresponding restriction in her residual functional capacity assessment. The ALJ had the advantage of seeing Plaintiff and listening to her as she testified. The ALJ's decision not to include such a restriction was within the range of reason and not an abuse of discretion in the absence of any expert opinion that the deficit(s) were of marked, serious or extreme.

Dr. Lopez or Cooper conducted an independent medical examination of Plaintiff in December, 2004. This physician imposed rather extreme limitations regarding Plaintiff's ability to sit, stand, walk and lift, but the basis for his opinion was that Plaintiff was mildly tender over the lumbar paraspinals and SI joints and that her lumbar range of motion was greatly reduced. His opinion was that Plaintiff had a high risk of developing osteoporosis and degenerative joint disease. This physician did not make reference to MRIs, x-rays, EMGs or any diagnostic tests. He made no finding of nerve root impingement or radiculopathy. He did not treat Plaintiff, supervise her course of physical therapy, prescribe medication or perform surgery. His work-related restrictions were completely inconsistent with the objective medical data, such that the ALJ had every reason to disregard them, especially since there was medical information in the record pointing to far less stringent restrictions. For example, and as detailed by Dr. Buenaventura, clearly a treating physician, the lumbar spine x-rays and MRI show only facet arthritis at L4-5 and L5-S1. The EMG conducted by Dr. Porter did not show a nerve root problem. Dr. Buenaventura, a pain specialist, could not find an objective basis for the degree of pain reported by Plaintiff.

The ALJ's residual functional capacity assessment was not very restrictive at all. Indeed, we might have been more so, especially with respect to postural limitations, such as bending and stooping, however, Drs. Klyop and Holbrook, although paper reviewers, performed their analysis after Dr. Lopez or Cooper and they determined that Plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl. Their conclusions were based on the following facts: "x-rays show normal lumbar spine, mild degenerative disc disease in the thoracic spine, MRI shows disc bulging, possible left L-5 foraminal stenosis, neurological examination is normal for motor, sensory and reflexes, decreased range of motion, hip pain, possible osteoarthritis." Although we question on a common sense basis, permitting a 50 year old grandmother with chronic low back pain to climb ropes and scaffolds, we doubt that performing such chores is an essential requirement of the jobs identified by the VE, such as janitor, prep cook and cashier. Because the possible error regarding scaffold and rope climbing does not relate to the jobs identified by the VE, it is of the harmless variety and could not have affected the ultimate decision of the ALJ.

15

The second Statement of Error faults the ALJ for finding Plaintiff less than fully credible. Plaintiff essentially argues that despite the fact that even Plaintiff's treating physician, a pain specialist, concluded that Plaintiff's subjective reports of pain were inconsistent with the medical facts, she has steadfastly pursued various strategies to seek relief, such as consulting primary care physicians, chiropractic care, physical therapy, lumbar and SI joint injections, aquatic therapy, the use of a TENS unit, and treatment by a pain specialist. Although there is no question that one's emotional state can exacerbate the perception of pain as well as increase one's ability to cope with pain, neither psychologist found any marked, serious or extreme functional limitation in the areas most likely to be affected by the perception of pain, to wit: the ability to attend, concentrate and keep pace and the ability to withstand stress.

The record reflects that Plaintiff is not a malingerer or a person who is purposely exaggerating her perception of pain. She has, in fact, pursued various avenues to seek relief. However, she simply lacks the objective medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms about which she complains. By so concluding, the ALJ shared the same mind-set as Dr. Buenaventura, the pain specialist and Plaintiff's own treating physician.

After conducting a thorough review of the medical record in this case, we conclude that the ALJ's decision was supported by substantial evidence and contained no error prejudicial to Plaintiff.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of the this Court.

Date: 7/27/09

Timothy S. Hogan
United States Magistrate Judge

# NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\osborne.wpd